UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HEATHER LYNN COOK,

        Plaintiff,

v.                                Case No. 8:11-cv-1488-T-33EAJ

MILLERCOORS, LLC, ET AL.,

        Defendants.

_____/

**<u>ORDER</u>**

This matter comes before the Court pursuant to Defendant MillerCoors LLC's Motion to Dismiss Plaintiff's Complaint (Doc. # 4), filed on July 5, 2011. Plaintiff Heather Lynn Cook filed a Response in Opposition to the Motion (Doc. # 21) on August 11, 2011. MillerCoors filed a Reply (Doc. # 26) on August 29, 2011, and Cook filed a Response to the Reply (Doc. # 29) on September 9, 2011. For the reasons that follow, the Court grants the Motion.

**I.   <u>Background</u>**

This suit arises from a motorcycle accident that occurred on July 18, 2008, in Pinellas County, Florida. (Doc. # 3 at ¶¶ 18-22). The operator of the motorcycle, John Prado, was killed instantly and Cook, who was a passenger, was injured. (<u>Id.</u>) Prior to the crash, Mr. Prado had consumed several "Sparks" alcoholic beverages containing caffeine and other stimulants.

(<u>Id.</u>) The Sparks product was manufactured, marketed and sold by MillerCoors. (<u>Id.</u> at ¶ 5).

Cook filed suit in state court on June 6, 2011. In her Complaint, Cook argues that alcoholic beverages such as Sparks containing stimulants are "uniquely dangerous" because they appeal to younger drinkers and because the addition of caffeine enables one to drink more alcohol without feeling as intoxicated as one normally would. (<u>Id.</u> at ¶ 6). Despite this perception, however, the stimulants do not reduce alcohol's negative effects on motor skills and visual reaction times. (<u>Id.</u> at ¶ 9). Thus, consumers of these beverages are more likely to "engage in dangerous behavior such as driving." (<u>Id.</u> at ¶ 8). After consuming Sparks, Mr. Prado "neither felt nor subjectively appeared impaired" but toxicology reports from his autopsy revealed that his blood alcohol level was 0.10 at the time of the crash. (<u>Id.</u> at ¶¶ 19, 22).

Cook's Complaint asserts three counts against MillerCoors. In Count I, Cook alleges that the combination of alcohol and stimulants created a latent inherent danger and MillerCoors failed to warn Mr. Prado of that inherent danger. (<u>Id.</u> at ¶¶ 24-25). In Count II, Cook alleges that the addition of stimulants to the alcoholic beverage constituted a design defect. (<u>Id.</u> at ¶ 30). In Count III, Cook alleges that

MillerCoors negligently manufactured Sparks, knowing that it was unreasonably dangerous and that inexperienced drinkers would be more likely to drink to excess due to the addition of stimulants. (Id. at ¶ 35). Cook also asserts a claim of auto negligence against the Estate of Prado (Count IV).

MillerCoors removed this action to this Court on diversity grounds on July 5, 2011 (Doc. # 1)[1], and simultaneously filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. # 4). MillerCoors argues that the risks associated with operating a motor vehicle while under the influence of alcohol are well known, therefore MillerCoors cannot be held responsible for Mr. Prado's choice to consume Sparks then illegally operate his motorcycle. (Doc. # 4 at 6-7).

MillerCoors further argues that the addition of stimulants "did not lessen Mr. Prado's responsibility to refrain from operating his motorcycle while under the influence of alcohol." (Id. at 7). MillerCoors asserts that Mr. Prado's actions, not the manufacture of Sparks, proximately caused Cook's injuries, and that MillerCoors owed no duty to prevent Mr. Prado from injuring her. (Id. at 10,

---

[1] MillerCoors alleged that the Estate of Prado was fraudulently joined.

-3-

13). Finally, MillerCoors argues that federal law preempts Cook's failure-to-warn claim, and that Sparks is not inherently dangerous. (<u>Id.</u> at 15, 17).

MillerCoors also argues that the Estate of Prado is not subject to suit. The Court will address this claim separately because joinder of the Estate, if proper, would defeat diversity in this action because Mr. Prado was a resident of Florida.

## II.  <u>Legal Standard</u>

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

However, the Supreme Court explains that:

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to

raise a right to relief above the speculative
level.

Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). A plausible claim for relief must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The Court notes that the Motion to Dismiss has not been converted into a motion for summary judgment because the Court has not considered matters outside the pleadings.[2] "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (quoting Fed. R. Civ. P. 7(a) and 10(c)). Thus, the Court has not considered the various exhibits

---

[2] When a document outside the pleadings is considered, Federal Rule of Civil Procedure 12(c) requires that "the motion be treated as a motion for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent by such a motion."

-5-

included with Cook's response in opposition to the motion to dismiss but not attached to a pleading.[3] (Doc. # 21).

## III. **Auto Negligence against the Estate of Prado (Count IV)**

As a preliminary matter, this Court must address the viability of Cook's claim against the Estate of Prado. A finding by this Court that Cook has stated a valid claim against the Estate would require remand since the Estate's presence in this matter would destroy diversity.

Under 28 U.S.C. § 1441, a defendant may remove an action brought in state court to federal court if "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Original jurisdiction is established where there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). "A defendant's 'right to removal cannot be defeated by a fraudulent joinder of a residential defendant having no real connection to the controversy.'" Allen v. Monsanto Co., No. 3:08-cv-320/MCR, 2009 WL 426546, at *2 (N.D. Fla. Feb. 20, 2009) (quoting Wilson v. Republic Iron & Steel

---

[3] Cook argues that "other courts have considered similar filings when ruling on motions to dismiss." (Doc. # 29 at 4-5). For support, she cites Condit v. Dunne, 317 F. Supp. 2d 344 (S.D.N.Y. 2004). There, the court considered news articles related to a libel case not for their substance but as "evidence of the 'media frenzy' cited in the complaint." The Court finds Condit distinguishable from the instant matter and declines to consider Cook's exhibits.

Co., 257 U.S. 92, 97 (1921)). "Joinder may be deemed fraudulent when there is no possibility that the plaintiff can establish a cause of action against the non-diverse defendant." Id. (citation omitted).

"A defendant alleging fraudulent joinder has the burden of proving the alleged fraud." Accordino v. Wal-Mart Stores E., LP, No. 3:05-cv-761-J-32MCR, 2005 WL 3336503 at *2 (M.D. Fla. Dec. 8, 2005) (citation omitted). That burden is a heavy one. Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). The Court must "evaluate factual allegations in the light most favorable to the plaintiff and resolve uncertainties about the applicable law in the plaintiff's favor." Id. The fact that the plaintiff may not ultimately prevail against the resident defendant does not mean that the resident defendant has been fraudulently joined; only a colorable claim against the resident defendant is needed. Id.

In its Motion, MillerCoors asserts that the Estate of Prado is not subject to suit because (1) Cook has already dismissed identical claims against the Estate with prejudice and (2) Florida law bars claims against an estate made more than two years after the decedent's death. (Doc. # 4 at 1). Cook does not address these arguments in her response to the Motion, nor has she filed a motion for remand.

-7-

Cook filed a separate lawsuit in state court against the Personal Representative of the Estate of John F. Prado on April 1, 2009, and filed a notice of voluntary dismissal with prejudice in that matter on October 5, 2010. (Doc. # 1 at 31-33, 35). The Court finds that Plaintiff's claims against the Estate in this action are in essence identical to the claims asserted against the Estate's Personal Representative in the prior matter and therefore barred by res judicata.[4]

Furthermore, the instant action was filed against the estate more than two years after Mr. Prado's death on July 18, 2008. Under Florida law, "2 years after the death of a person, neither the decent's estate, the personal representative, if any, nor the beneficiaries shall be liable for any claim or cause of action against the decedent . . . except as provided in this section." Fla. Stat. § 733.710(1). The statute provides an exception for creditors who have properly filed a claim against the estate within the two-year period, and such claim is still pending in probate proceedings. Fla. Stat. § 733.710(2). Because Cook has not offered any evidence of such

---

[4] Although the documents related to the prior state court action are attached to the Notice of Removal, which is not a pleading, the Court may take judicial notice of these official public records without converting the motion to dismiss into one for summary judgment. Davis v. Williams Commc'ns, Inc., 258 F. Supp. 2d 1348, 1352 (N.D. Ga. 2003).

a pending claim, the Court finds that the claim against the Estate is also time-barred.

Finally, a review of the file indicates that Cook has not properly served the Estate. For the foregoing reasons, the Court finds that the Estate was fraudulently joined and grants MillerCoors's Motion with regard to Count IV of the Complaint. Having established jurisdiction, the Court will address the remainder of the Motion.

## IV.  Analysis

The crux of MillerCoors's argument is that there is no cause of action against a manufacturer of alcoholic beverages for injuries resulting from their consumption because the effects of alcohol consumption are well known. (Doc. # 4 at 2). Cook counters, in essence, that these holdings apply to "conventional" alcoholic beverages, not to an alcoholic beverage mixed with stimulants designed to suppress the consumer's awareness of alcohol's well-known effects. (Doc. # 21 at 2). The Court will address the parties' arguments in detail with regard to each count in the Complaint.

### A.  Failure to Warn

In Count I, Cook alleges that the combination of alcohol and stimulants in Sparks created a latent inherent danger in the product. Because of that danger, MillerCoors had a duty to warn consumers but failed to warn Mr. Prado. As a result, Mr.

-9-

Prado became intoxicated to the point of impairment, causing the motorcycle crash. (Doc. # 3 at ¶¶ 24-26).

In order to prevail on a failure-to-warn claim, a plaintiff must establish the existence of a duty. A manufacturer's duty to warn arises when there is a need to inform consumers of dangers of which they are unaware. Robinson v. Anheuser-Busch, Inc., No. Civ.A.-00-D-300-N, 2000 WL 35432556, at *2 (M.D. Ala. Aug. 1, 2000).

> Generally, however, a manufacturer does not have a duty to warn consumers of dangers which are obvious or commonly known. . . . Because the dangers associated with alcohol consumption are very well known, courts have usually found that alcohol manufacturers and retailers do not have a duty to warn consumers about the risks posed by the excessive use, or prolonged use of alcohol because those risks are common knowledge.

Id.; see also Bruner v. Anheuser-Busch, Inc., 153 F. Supp. 2d 1358 (S.D. Fla. 2001) (finding no duty to warn because "the dangers inherent in alcohol consumption are well known to the public").

Cook argues that these holdings do not apply because "Sparks misleads drinkers into believing they are 'less intoxicated than they really are.'" (Doc. # 21 at 9). She further explains that she does not allege a common law duty to warn regarding the well-known effects of alcohol, but rather that "Sparks *masks* the otherwise 'well recognized' effects of alcohol and so encourage[s] excessive drinking." (Id.)

Nonetheless, Cook does not allege that Mr. Prado was unaware that he was drinking alcohol. Therefore, the Court must assume that he did so with knowledge of its potential effects. Mr. Prado's subjective awareness of those effects does not alter the legal reasoning of precedent within the Eleventh Circuit: There is no duty to warn because of the "universal recognition of *all potential dangers* associated with alcohol." <u>Victory over Addiction Int'l, Inc. v. Am. Brands, Inc.</u>, No. 97-14489-Civ-Ryskamp, 1998 U.S. Dist. Lexis 23542, at *8 (S.D. Fla. Feb. 4, 1998) (emphasis added).

Courts in other circuits have declined to impose a duty to warn on manufacturers of alcoholic beverages based upon a plaintiff's perception or understanding of the risks involved with a particular product. <u>See, e.g.</u>, <u>Malek v. Miller Brewing Co.</u>, 749 S.W.2d 521 (Tex. App. 1988) (finding no duty to warn despite claim that advertising led plaintiff to believe that "Lite" beer was less intoxicating than other beer); <u>Pemberton v. Am. Distilled Spirits Co.</u>, 664 S.W.2d 690 (Tenn. 1984) (holding that the risk of death from ingesting Everclear grain alcohol was not unknown). Courts have also noted the difficulty of devising a warning regarding the particular tolerance of an individual consumer. <u>See</u> <u>Greif v. Anheuser-Busch Cos., Inc.</u>, 114 F. Supp. 2d 100 (D. Conn. 2000); <u>MaGuire v. Pabst Brewing Co.</u>, 387 N.W.2d 565 (Iowa 1986). Although

-11-

these decisions are not binding on this Court, they follow the same reasoning as Florida court decisions and amplify the analysis.

Cook discusses at some length the concerns of state attorneys general and experts regarding the marketing and use of alcoholic energy drinks by young people. (Doc. # 3 at ¶¶ 10-11, 16). She contrasts these concerns with MillerCoors's packaging and aggressive promotion of Sparks. (Id. at ¶¶ 13-15). She states that "[n]o case has been cited or found that immunizes a company from liability when it goes to such lengths to market a dangerous intoxicant to young consumers." (Doc. # 21 at 9). However, Cook cites no case imposing such liability.

While it may be tempting to translate these allegations into a duty to warn, courts must be careful to distinguish between moral and legal duties. See Malek, 749 S.W.2d at 523. Furthermore, any expansion of warning requirements for alcoholic energy drinks is a policy question for the elected branches and not the courts. See Brown Forman Corp. v. Brune, 893 S.W.2d 640, 647 (Tex. App. 1995) ("Considering the extensive involvement of the federal and state government in regulating alcoholic beverages, we conclude that the subject of warnings on alcoholic beverages . . . should be left to the legislative process.").

MillerCoors argues that Cook's state-law failure-to-warn claim is preempted by federal statutes specifying the warnings required on all containers of alcoholic beverages. (Doc. # 4 at 15-16). The Alcoholic Beverage Labeling Act provides that "[n]o statement relating to alcoholic beverages and health, other than the statement required by section 215 of this title, shall be required under State law to be placed on any container of an alcoholic beverage or on any box, carton, or other package . . . ." 27 U.S.C. § 217. Cook counters that this regulation applies only to containers and that her Complaint "alleges that MillerCoors misled consumers about the risks of Sparks through its mass advertising campaign." (Doc. # 21 at 15).

Cook makes a well-reasoned argument against preemption. Nonetheless, courts have declined to extend the duty to warn to the marketing of alcoholic beverages.[5] See Robinson, 2000 WL 35432556 (holding that beer commercials featuring "talking" frogs, lizards and alligators that might appeal to children did not create a duty to warn about the dangers of underage drinking). This Court declines to do so as well.

---

[5] The Court did not consider the new allegations in Cook's Response to the Motion that Sparks was unlawfully marketed "without approval from the FDA." (Doc. # 26 at 16).

-13-

Based upon the foregoing analysis, the Court finds that Cook has failed to allege facts sufficient to establish a duty to warn. The Court therefore grants the Motion with regard to Count I of the Complaint. Count I is dismissed without prejudice with leave to amend.

## B. <u>Design Defect</u>

In Count II, Cook further alleges that the addition of stimulants to an alcoholic beverage constituted a design defect. (Doc. # 3 at ¶ 30). Failure to correct the design defect rendered Sparks not reasonably safe and contributed substantially to Mr. Prado's crash. (<u>Id.</u> at ¶ 33). MillerCoors asserts that Cook's design defect claim must fail because Sparks is not unreasonably dangerous. (Doc. # 4 at 5).

To sustain a defective product claim, a plaintiff must show "(1) that a defect was present in the product; (2) that it existed at the time the manufacturer parted possession with the product; and (3) that it caused the injuries of which the Plaintiff complains." <u>Barrow v. Bristol-Myers Squibb</u>, No. 96-689-CIV-ORL-19B, 1998 WL 812318, at * 27 (M.D. Fla. Oct. 29, 1998). A design defect is one that causes unforeseen hazards during normal use of the product. <u>Id.</u> "The test for determining whether a product is defective varies depending upon the theory asserted." <u>Id.</u>

-14-

Cook appears to assert a theory of strict liability. "It is unnecessary in a strict liability action to show that the manufacturer has been negligent in any way." Jennings v. BIC Corp., 181 F.3d 1250, 1256 (11th Cir. 1999) (internal quotations and citations omitted). In the area of strict liability, Florida courts adopted Section 402A of the Restatement (Second) of Torts in West v. Caterpillar Tractor Co., 336 So.2d 80, 87 (Fla. 1976). "A product is defective when it 'is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, but which will be unreasonably dangerous to him.'" Bruner, 153 F. Supp. 2d at 1360 (quoting Rest. 2d Torts § 402A, comment (g)). Florida courts have recognized that alcoholic beverages are "not considered unreasonably dangerous as defined by the Restatement (Second) of Torts." Id. This is so because the dangers associated with alcohol are well known. Id. at 1361.

Cook again distinguishes Sparks from "conventional" alcoholic beverages because of the addition of stimulants. She alleges in her Complaint that "[t]he United States Food and Drug Administration does not recognize any of the stimulants and other non-traditional ingredients [in Sparks] as Generally Recognized as Safe (GRAS) for use in alcoholic beverages." (Doc. # 3 at ¶ 7). The Court accepts this allegation as true and construes it in the light most favorable to Cook. However,

-15-

Cook does not establish a correlation between the lack of FDA recognition of the additives and the safety of the product. "In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in plaintiff's favor but we are not required to draw plaintiff's inference." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (internal quotations and citation omitted).

More significantly, the "direct and proximate result" of the alleged design defect involves the effects of alcohol -- that Mr. Prado "became intoxicated to the point that his normal faculties were impaired." (Doc. # 3 at ¶ 31). Those effects are well known, irrespective of Mr. Prado's subjective awareness of them. "The defectiveness of a design is determined based on an objective standard, not from the viewpoint of any specific user." Jennings, 181 F.3d at 1255.

The Court therefore finds that Cook has failed to allege facts sufficient to show that Sparks is unreasonably dangerous, and grants the Motion with regard to Count II of the Complaint. Count II is dismissed without prejudice with leave to amend.

A manufacturer not strictly liable for a product defect could still be liable for negligence. See Jennings, 181 F.3d at 1257. "In the law of negligence, a product is defective when the manufacturer has a duty to exercise reasonable care

-16-

so that its products will be reasonably safe for use in a foreseeable manner, and the manufacturer has breached that duty." <u>Barrow</u>, 1998 WL 812318, at *27. The Court will undertake the negligence analysis with respect to Count III.

## C. **Negligence**

In Count III, Cook alleges that MillerCoors negligently manufactured Sparks, knowing that it was unreasonably dangerous and that consumers, particularly young people and inexperienced drinkers, would be more likely to drink to excess due to the addition of stimulants. (Doc. # 3 at ¶ 35). To prove any products liability claim sounding in negligence, including negligent design or manufacture, a plaintiff must show "(1) that the defendant owed a duty of care toward the plaintiff, (2) that the defendant breached that duty, (3) that the breach was the proximate cause of the plaintiff's injury, and (4) that the product was defective or unreasonably dangerous." <u>Cooper v. Old Williamsburg Candle Corp.</u>, 653 F. Supp. 2d 1220, 1226 (M.D. Fla. 2009).

MillerCoors argues that it had no legal duty to protect Cook from the harm caused by Mr. Prado's operation of his motorcycle while intoxicated. (Doc. # 4 at 5). MillerCoors further argues that Mr. Prado's choice to consume alcohol and operate his motorcycle was the proximate cause of the crash and Cook's injuries. (<u>Id.</u>)

-17-

1.   **Duty**

To sustain her negligence claim, Cook must show that
MillerCoors owed a duty to prevent the harm caused to her by
Mr. Prado. "The common law has long established that a
commercial maker of alcoholic beverages owes no duty of care
as regards the intended and well recognized properties of
their products." Victory over Addiction Int'l, 1998 U.S. Dist.
LEXIS 23542, at *4.

Furthermore, "[a]s a general principle, a party has no
legal duty to control the conduct of a third person to prevent
that person from causing harm to another." Aquila v. Hilton,
Inc., 878 So.2d 392, 398 (Fla. 1st DCA 2004). A duty to
protect a third party can also arise if there is a "special
relationship" between the defendant and the person causing the
harm, or between the defendant and the harmed person. Michael
& Philip, Inc. v. Sierra, 776 So.2d 294, 298 (Fla. 4th DCA
2000). MillerCoors argues that no such relationships exists
between it and Cook, and Cook does not appear to disagree.

Instead, Cook argues that the "special relationship"
requirement was rejected by the Florida Supreme Court in
United States v. Stevens, 994 So.2d 1062 (Fla. 2008). She
further asserts that a legal duty exists "if a foreseeable
zone of risk more likely than not was created by the

-18-

defendant." <u>McCain v. Fla. Power Corp.</u>, 593 So.2d 500, 503
(Fla. 1992).

The Court finds these holdings inapplicable to the
present case. <u>Stevens</u> involved the duty of a government lab to
prevent bioterrorism by protecting biohazards under its
control -- particularly in light of its history of missing lab
specimens. <u>McCain</u> involved the duty of Florida Power Corp. to
accurately mark the location of underground power lines. Key
to the analysis in both cases was the defendant's exclusive
knowledge of the risk and the inability of potential victims
to protect themselves. In contrast, Florida courts have
declined to impose a duty on manufacturers of alcoholic
beverages because the risks associated with alcohol are well
known. The Court therefore finds that Cook has failed to
allege facts sufficient to establish that MillerCoors owed a
duty of to protect her from the harm caused by Mr. Prado.

### 2.  <u>Proximate Cause</u>

Cook alleges that, because of MillerCoors's negligence,
Mr. Prado became intoxicated to the point of impairment,
causing the crash and Cook's injuries. "In Florida, however,
voluntary drinking of alcohol is the proximate cause of an
injury, rather than the manufacture or sale of those
intoxicating beverages to that person." <u>Bruner</u>, 153 F. Supp.

-19-

2d at 1361. This traditional common law rule, with two exceptions, was codified in the Florida statutes:

> A person who sells or furnishes alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury or damage caused by or resulting from the intoxication of such person, except that a person who willfully and unlawfully sells or furnishes alcoholic beverages to a person who is not of lawful drinking age or who knowingly serves a person habitually addicted to use of any or all alcoholic beverages may become liable for injury or damage caused by or resulting from the intoxication of such minor or person.

Fla. Stat. § 768.125. Cook has not alleged that either of the exceptions applies in this case.

Cook argues that the common law rule was overturned by Ellis v. N.G.N. of Tampa, Inc., 586 So.2d 1042 (Fla. 1991). She quotes Ellis for the proposition that it is "not consumption but whether, under the circumstances, it was foreseeable that injury or damage would occur after a sale, particularly when sales are made to persons who lack[] the ability to make responsible decisions in the consumption of alcohol." 586 So.2d at 1046. Cook has misconstrued Ellis. That quote is taken from the court's discussion of a change in Florida common law in the 1960s, prior to the enactment of Fla. Stat. § 768.125. The court goes on to say that "[t]he statute effectively codified the original common law rule absolving vendors from liability for sales but provided exceptions for sales to those who were not of a lawful

-20-

drinking age or to a person habitually addicted to alcoholic beverage use." Id.

Cook argues that "[n]othing in Florida law prohibits a finding of proximate cause when, as here, a manufacturer has intentionally developed an alcoholic drink to reduce a consumer's 'ability to make responsible decisions in the consumption of alcohol.'" (Doc. # 21 at 12). However, the Ellis court held that Fla. Stat. § 768.125 limits liability for the sale of alcoholic beverages with express exceptions for two specific classes of persons -- minors and alcoholics. 586 So.2d at 1047. Other Florida courts have agreed. See, e.g., Publix Supermarkets, Inc. v. Austin, 658 So.2d 1064 (Fla. 5th DCA 1995); Barnes v. B.K. Credit Svc., Inc., 461 So.2d 217 (Fla. 1st DCA 1985). The Publix court further held that no negligence cause of action exists under Fla. Stat. § 768.125. 658 So.2d at 1066.

Generally, proximate cause is a question of fact. However, the question of proximate cause does not always require interpretation by a jury. Tatom v. Seaboard Air Line R. Co., 93 Fla. 1046, 1055 (Fla. 1927). Under Florida law, Mr. Prado's voluntary drinking of alcohol, not the manufacture or sale of Sparks, is the proximate cause of Cook's injury.

Based upon the foregoing analysis, the Court finds that Cook cannot sustain a negligence cause of action in this case.

The Court therefore grants the Motion as to Count III of the Complaint. Count III is dismissed with prejudice.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

(1)   Defendant MillerCoors LLC's Motion to Dismiss Plaintiff's Complaint (Doc. # 4) is **GRANTED**.

(2)   Counts I and II of Cook's Complaint are dismissed without prejudice. Cook may file an amended Complaint with regard to those claims within fourteen days of the date of this Order. Counts III and IV are dismissed with prejudice.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>28th</u> day of October, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record

-22-